IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSEPH J. BLASKOVITZ, JR., by and     :
through his attorney-in-fact,     : C.A. No. K16C-10-017 WLW
DACE BLASKOVITZ and the Estate of     : Kent County
DOTTIE C. BLASKOVITZ, by and     :
through its executor, DACE BLASKOVITZ :

               Plaintiffs,     :

      v.                               :

DOVER FEDERAL CREDIT UNION,     :

               Defendants.     :

Submitted: May 25, 2017
Decided: June 15, 2017

**ORDER**

Upon Defendant's Motion to Dismiss.
*Granted in Part; Denied in Part.*

Jason C. Powell, Esquire of The Powell Firm, LLC, Wilmington, Delaware; attorney for the Plaintiffs.

Michael C. Heyden, Esquire of The Law Offices of Michael C. Heyden, Wilmington, Delaware; attorney for the Defendant.

WITHAM, R.J.

Before the Court are a Motion to Dismiss filed by Defendant Dover Federal Credit Union (the "Credit Union") and the Plaintiffs' response in opposition. The parties presented oral argument on May 25, 2017. The motion raises two issues for the Court's decision: (1) whether the Complaint's allegations of common-law negligence and breach of contract are displaced by Delaware's enactment of the Uniform Commercial Code (UCC) and, if not, (2) whether the Complaint's allegations are so vague as to warrant dismissal. Because the Court holds that the negligence claim is displaced but the breach of contract claim is not, the Motion to Dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case centers around three members of the Blaskovitz family: Joseph and the late Dottie Blaskovitz, husband and wife, and their only son, Dace (collectively, the "Plaintiffs").[1] The Complaint alleges as follows:

Joseph and Dottie were lifelong Delawareans who retired to Florida. Their assets consisted principally of accounts at the Credit Union and a mobile home park. While in Florida, Joseph and Dottie's health began to decline. Both would eventually develop dementia and, as a result of their declining health, the two moved back to Delaware in the fall of 2014.

Joseph is a longtime customer of the Credit Union. In 1963, he became customer number "007."

---

[1] Because all three Plaintiffs share the same surname, the Court will, for the moment, set aside its ordinary preference for formality and refer to each by his or her first name.

After Joseph and Dottie moved back to Delaware, their son Dace (who was and is their power of attorney) began making arrangements to protect the couple's assets. Among those arrangements was a June 2015 meeting with representatives of the Credit Union, including President and Chief Executive Officer Glen Daniels, to notify the Credit Union of the pair's declining health and potential susceptibility to fraud. In response, the Credit Union declined to list Dace as one of the owners on the account. But the Credit Union, at Dace's urging, promised to provide "additional protection and oversight" of his parents' accounts. Based on those promises, Dace began to focus on other matters on his parents' behalf. But the Credit Union did nothing to investigate or alert the Blaskovitzes when third parties (apparently residents of the Blaskovitzes' mobile home park) "were absconding with thousands of dollars" from the parents' accounts.

It was not until over a year later, in February 2016, that Dace got access to account information for his parents' accounts at the Credit Union. What he found dismayed him: the account balances were significantly lower than he expected and included a "wrongful decrease" of at least $334,445.00. As power of attorney for his parents, Dace notified the Credit Union, filed a claim, and provided an Affidavit of Forgery for the sixty days before February 18, 2016. The Credit Union told him that he could only recover losses going back sixty days, and in the end only returned $18,100 to Joseph and Dottie's accounts.

On behalf of his father and his mother's estate,[2] Dace sued the Credit Union for

---

[2] Dottie passed away in August of 2016.

negligence and breach of contract.

The negligence claim was based on a few separate alleged duties. The first was the Credit Union's duty to safeguard its customers' funds, which the Plaintiffs say was breached when the Credit Union "wrongfully honor[ed]" forged checks and failed to put a policy or process in place to review the authenticity of signatures on checks. The second and third duties arose under Delaware's enactment of the Uniform Commercial Code and the Credit Union's promise to the Plaintiffs after learning of the parents' incapacity. The Credit Union breached these duties, the Plaintiffs say, when they continued to pay forged checks. The final source of duties is unclear. The Plaintiffs allege that there were a number of procedures and protocols that are "customary or should be implemented . . . to combat . . . financial exploitation of the elderly."

The breach of contract claim was based on "a Joint Share Account Agreement, among others" into which the parties entered. The agreements, the Plaintiffs allege, required sight review of checks, which the Credit Union failed to perform. The Plaintiffs also appear to allege that the agreements required full reimbursement of the forged payments under the circumstances described in the Complaint. Finally, the Plaintiffs allege that their damages are a result of the Credit Union's failure to follow through on its promises to Dace.

The Credit Union filed a Motion to Dismiss, which the Plaintiffs oppose. This is the Court's ruling on the Credit Union's Motion to Dismiss.

4

## THE PARTIES' CONTENTIONS

The Credit Union argues that bank customers may not assert common-law negligence and breach-of-contract claims against their bank when the bank pays on forged checks. The Credit Union contends that such claims are displaced by the Uniform Commercial Code. To the extent that there are any legally viable claims, the Credit Union argues, they are not alleged with sufficient specificity to survive a motion to dismiss.

The Plaintiffs argue that both negligence and breach-of-contract claims are viable when a bank pays on forged checks, and are only displaced when the circumstances and duties fall within the scope of the UCC. The representations made by the Credit Union, the Plaintiffs contend, bring the claims outside the scope of the UCC. The Plaintiffs also argue that to the extent that the Complaint could be made more specific, a motion to dismiss is not the appropriate remedy.

## STANDARD OF REVIEW

"Delaware is a notice pleading jurisdiction. Thus, for a complaint to survive a motion to dismiss, it need only give general notice of the claim asserted."[3] When deciding a motion to dismiss under Superior Court Rule of Civil Procedure 12(b)(6), (hereafter "Rule 12(b)(6)") all well-pleaded allegations in the complaint must be accepted as true.[4] The test for sufficiency is a broad one: the complaint will survive the motion to dismiss so long as "a plaintiff may recover under any reasonably

---

[3] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (internal citations omitted).
[4] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

conceivable set of circumstances susceptible of proof under the complaint."[5] However, the Court "will not accept conclusory allegations unsupported by specific facts or [] draw unreasonable inferences in favor of the non-moving party."[6] Stated differently, a complaint will not be dismissed unless it clearly lacks factual or legal merit.[7]

## DISCUSSION

The Complaint fails to state a claim as to the negligence count, but the breach-of-contract count is legally sufficient and not displaced by the UCC. The lack of specific details regarding the allegedly fraudulent checks does not entitle the Credit Union to dismissal.

### I. Whether the Complaint States a Claim

The duties alleged to have been breached in the negligence claim are displaced by the UCC. The breach of contract claim, however, is not displaced because the UCC specifically permits the parties to modify the UCC by agreement.

The provisions of the UCC do not necessarily displace the common law.[8] Stated differently, "the UCC does not displace the common law remedies except . . . insofar as their reliance on the common law would thwart the purposes of the

---

[5] *Id.* (citing *Klein v. Sunbeam Corp*, 94 A.2d 385 (Del. 1952)).

[6] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (quoting *Clinton v. Enterprise Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[7] *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970).

[8] 6 *Del. C.* § 1-103.

code."[9] The Superior Court has previously held that "[t]he Code preempts common law duties; an action in negligence or breach of contract cannot stand" between a payor bank and its customer.[10]

### A. *The Negligence Claims are Precluded by the Uniform Commercial Code*

As to the negligence claim made by the Plaintiffs, the duties alleged are entirely displaced by the Uniform Commercial Code, which imposes strict liability against a financial institution for the payment of an unauthorized item.

The UCC displaces the single negligence allegation that invokes 6 *Del. C.* § 4-405. Section 4-405 requires that the customer be adjudicated incompetent before its obligations are triggered. If Dottie and Joseph were both adjudicated incompetent, that fact was left out of the Complaint or at least not adequately pleaded. Even if the Plaintiffs had alleged such a breach, the proper action to remedy any such error would be an action under the UCC's provisions, not common-law negligence.

The other duties allegedly breached by the Credit Union are a duty "to protect the funds" that the Plaintiffs maintained with it, to conduct a sight review, and to have a "commercially reasonable policy" for verifying signatures. These and other duties, including a customer's duty to "discover and report unauthorized signature[s]," are

---

[9] *Mahaffy & Assocs., Inc. v. Long*, No. 01C-06-235, 2003 WL 22351271, at *6 (Del. Super. Sept. 29, 2003) (citing *N.J. Bank, N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339, 346 (3d Cir. 1982)).

[10] *Id.*

entirely controlled by the provisions of the UCC, and thus displaced.[11] The only cases the Plaintiffs cite to the contrary are from outside this jurisdiction, and the Court finds them unpersuasive.

In displacing the common-law duties of a financial institution to its customer, the UCC does not leave customers without a potent remedy. The general rule is that a financial institution is strictly liable for paying an unauthorized item and must re-credit its customer's account.[12] While the UCC remedy may subject a claim to a number of defenses otherwise unavailable at common law, those defenses cannot be avoided by simply pleading an alternate cause of action. This is especially so where, as here, the common-law cause of action is entirely displaced by the UCC's strict liability provision.

The negligence count thus fails to state a claim upon which relief may be granted and is dismissed.

### B. *The Breach of Contract Claim is Not Displaced by the UCC*

As to the breach-of-contract claim, the rule in *Mahaffy & Associates* should not

---

[11] 6 *Del. C.* § 4-406; 6 *Del. C.* § 4-401(a) (imposing strict liability as the basic rule when a bank charges an unauthorized item against a customer's account); 6 *Del. C.* § 3-103(a)(7) ("'Ordinary care' in the case of a person engaged in business means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for . . . payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this Article or Article 4."); *see also Associated Home & RV Sales, Inc. v. Bank of Belen*, 294 P.3d 1276, 1280–81 (N.M. 2012).

[12] 6 *Del. C.* § 4-401(a).

be viewed as requiring displacement of all potential contract claims between a bank and its customer. Under 6 *Del. C.* § 4-103(a), a bank and its customers may vary the provisions of Article 4 by agreement. It follows that such an agreement, including (at least potentially) subsequent representations made by the bank, would be enforceable at law.[13] Under the UCC's general displacement principles, there is no reason to believe that breach of contract claims are displaced. Neither the UCC nor this Court will interfere with the parties' freedom to contract within the limits of the law.

The breach of contract claim is not displaced by the UCC. To the extent the parties' agreement left the UCC untouched, however, the UCC would remain the controlling authority and the sole available cause of action.

*II. Whether the Claim is Sufficiently Specific to Survive a Motion to Dismiss*

Additionally, the breach of contract count is sufficiently specific to survive a motion to dismiss.

The Plaintiffs have a duty to provide a more definite statement, upon motion, when they submit pleadings that are "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."[14]

The Credit Union cites to a pre-*Twombly/Iqbal* U.S. district court decision for the proposition that contractual claims must allege (1) the agreements at issue, (2)

---

[13] *See* 6 *Del. C.* § 1-103(a)(2) (noting that the UCC "must be liberally construed and applied to promote its underlying purposes and policies, which [include] . . . [t]o permit the continued expansion of commercial practices through . . . agreement of the parties").

[14] Super. Ct. Civ. R. 12(e).

which representations within that agreement are at issue, and (3) "the manner in which" the agreements "were allegedly breached."[15] The court in that case ordered a more definite statement.[16]

Further, the Credit Union argues based on two superannuated cases involving now-abolished[17] causes of action, the Plaintiffs must allege "when and where" wrongful acts occur.[18] But in *Weiner v. Markel*, the Superior Court held that where a cause of action (in this case, alienation of affections) "would necessarily consist of a series of isolated acts . . . the pleader should not be required to specify the dates with any particularity. A motion for a more definite statement will afford ample opportunity to obtain full information containing the times and places when and where the alleged acts occurred."[19] And in both cases, the court ordered a more definite statement, not the dismissal the Credit Union now seeks.[20]

Finally, the Credit Union cites the decision of a federal district court sitting in a neighboring state for the proposition that a plaintiff's complaint risks dismissal if it fails to identify the "amounts of the checks, the appearance of the signatures, the circumstances about the [fraudulent depositor]'s account and her depositing habits,

---

[15] *New Shah, Inc. v. Shah*, No. Civ. A. 99-461, 2000 WL 1728251, at *6 (D. Del. June 20, 2000).

[16] *Id.*

[17] *See* 10 *Del. C.* § 3924.

[18] *See Weiner v. Markel*, 92 A.2d 706, 707 (Del. Super. 1952); *Bullock v. Maag*, 94 A.2d 382, 384 (Del. Super. 1952).

[19] *Weiner*, 92 A.2d at 707.

[20] *Id.*; *Bullock*, 94 A.2d at 384.

or to whom the checks were made."[21] But the federal district courts apply a pleading standard under *Bell Atlantic Corp v. Twombly*[22] and *Ashcroft v. Iqbal*[23] that is "more rigorous than Delaware's counterpart pleading standard."[24] In Delaware, "a complaint will survive a motion to dismiss if it states a cognizable claim under any 'reasonably conceivable' set of circumstances inferable from the alleged facts."[25]

The Court agrees that under Rule 12(e) the Plaintiffs would have been obligated, upon motion by the Credit Union, to identify the allegedly breached agreements and what checks were fraudulent (including, at least, the date and item number of the check). Otherwise, it would be difficult for the Credit Union to frame a responsive pleading.

But the Credit Union's position that dismissal is the appropriate remedy at this stage is entirely unpersuasive. Nothing in the cases they have cited from within this jurisdiction suggests that dismissal is appropriate when a complaint states a claim but does so vaguely. The Credit Union could have moved, in the alternative, for a more definite statement. The Court will not provide relief that the Credit Union has not requested and, indeed, was obligated to request in the same motion under Rule 12(g). The Credit Union will have to rely on our discovery procedures, including carefully

---

[21] *Silver v. Wells Fargo Bank, N.A.*, No. MJG-16-382, 2016 WL 6962862, at *3 (D. Md. Nov. 29, 2016).

[22] 550 U.S. 544 (2007).

[23] 556 U.S. 662 (2009).

[24] *Winshall v. Viacom Int'l Inc.*, 76 A.3d 808, 813 n.12 (Del. 2013).

[25] *Id.*

crafted interrogatories, to narrow the scope of the litigation going forward.

## CONCLUSION

The Credit Union's Motion to Dismiss is **GRANTED IN PART**. Count I of the Complaint is **DISMISSED WITHOUT PREJUDICE**. The Credit Union must answer the remainder of the Complaint.

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh